CONLEY, J.T.C.
Plaintiff Great Adventure, Inc. seeks a declaratory judgment that it is not required to collect a sales tax on the value of discount coupons that it issues and its patrons use toward their admission to Great Adventure theme park and drive-thru safari. Defendant, Director of the Division of Taxation, ruled that the value of discount coupons is taxable, by letters to plaintiff dated April 6 and April 18, 1979. Plaintiff has been collecting the tax in accordance with defendant’s position and now seeks prospective relief. Both parties filed motions for summary judgment and argued their respective positions before this court.
Great Adventure, Inc. has its principal office in Jackson Township, New Jersey, where it operates a theme park and drive-thru safari. Plaintiff sells daily tickets charging a separate admission price for the park, for the safari and for a combination of both. It also sells season passes. Plaintiff offers a reduction from the price of its tickets by issuing *61 discount coupons, which are distributed through various sources. These coupons are “nonreimbursable” in that plaintiff receives no remuneration for the value of the coupons from a third party.
The New Jersey Sales and Use Tax Act, N.J.S.A. 54:32B-1 et seq. imposes a tax of 6%, with certain exceptions, on
[a]ny admission charge where such admission charge is in excess of $0.75 to or for the use of any place of amusement in the State, [N.J.S.A. 54:32B-3(e)(l) 1
A place of amusement is simply “[a]ny place where any facilities for entertainment, amusement, or sports are provided.” N.J.S.A. 54:32B-2(t). It is undisputed that Great Adventure is a place of amusement and thus the sales tax is applicable to its admission charges. The sole substantive question presented by this case is whether the face value of nonreimbursable discount coupons issued by, and used by patrons of, a place of amusement is taxable under the act, i.e., whether the face value of these coupons is part of the admission charge. The answer to this question is not explicitly set forth in the act, nor is there any decisional law or regulation on the subject. Hence, the court is obliged to construe the statute so as to effectuate the intent of the Legislature. See AMN, Inc. v. South Brunswick Tp. Rent Leveling Bd., 93 N.J. 518, 461 A.2d 1138 (1983).
The act defines an admission charge as “[t]he amount paid for admission ....” N.J.S.A. 54:32B-2(o). The Legislature therefore intended the tax to be based on the amount paid, not the amount charged. The word “paid” is not defined by the act. It should therefore be given its ordinary and well understood meaning. In re Barnert Memorial Hospital Rates, 92 N.J. 31, 40, 455 A.2d 469 (1983). “Paid” is the past tense of the verb “to pay” which has been defined as follows:
pay—v.t. 1. to give to (a person) what is due, as for goods received, services rendered, etc.; remunerate; recompense [Webster’s New World Dictionary (Coil ed. I960)]
pay—tr. 1. to remunerate or recompense for goods or services rendered. 2. to give (money) in exchange for goods or services. [The American Heritage Dictionary of the English Language (1973) ]
pay—v.t. 2c: to make a disposal or transfer of (money) [Webster’s New Collegiate Dictionary (1979) ]
*62 In the context of this case, the word reflects the amount tendered by the customer of any place of amusement. “Charge,” as used in “admission charge,” on the other hand, is a noun meaning “cost; price [or] expense.” Webster’s New World, supra. It most likely represents the amount asked for or established by the provider of any place of amusement. Therefore, the Legislature in defining “admission charge” as the “amount paid,” not the “amount charged,” has demonstrated its intent to impose the sales tax on the amount tendered by the customer. This conclusion is consistent with the scheme of the act, which, in general terms, imposes the tax on the consumer but requires the retailer to collect it.
This still leaves the question of what amount the customer pays when tendering a coupon. The answer to this question also lies in the ordinary meaning of the word “paid.” In two of the three definitions, the word “money” is used. Although the term is given merely as an example of what may be paid, I think the definitions contemplate the giving or transfer of money or anything else having economic value. Webster’s New Collegiate, supra provides additional light on this subject. It lists the synonyms of “pay,” including “remunerate” and “recompense,” and states that they share the following meaning: “to give money or an equivalent in return for something.” “Equivalent” as used here means “equal in value.” Ibid. Therefore, the ordinary meaning of “paid” contemplates the transfer of value.
The above analysis of the ordinary meaning of the words “pay” and “paid” comports with the traditional legal definitions of these words. Black’s Law Dictionary, (5 ed. 1979), defines “pay” in the context of “debtor-creditor law” as follows:
[t]o discharge a debt by tender of payment due.
Payment is defined as
a delivery of money or its equivalent in either specific property or services by one person from whom it is due to another person to whom it is due (citation omitted). A discharge in money or its equivalent of an obligation or debt owing by one person to another, and is made by debtor’s delivery ‘to creditor of’ money or some other valuable thing, and creditor’s receipt thereof, for purpose of extinguishing debt. [Ibid.; citation omitted; emphasis supplied]
*63 Our courts have similarly defined “payment” as “the discharge of an obligation; it may be made in money, kind or anything of equivalent value.” Thomas v. Bd. of Rev., Div. of Emp. Sec., 83 N.J.Super. 91, 97, 199 A.2d 33 (App.Div.1964), rev’d on other grounds, 43 N.J. 549 (1965); emphasis supplied. In Thomas the word was defined in the context of the Temporary Disability Benefits Law, N.J.S.A. 43:21-25 et seq. The Legislature is assumed to be thoroughly familiar with the judicial construction of its statutes. Brewer v. Porch, 53 N.J. 167, 249 A.2d 388 (1969). Therefore, it presumably was aware of this definition when it enacted the Sales and Use Tax Act.
Since the words “to pay” or “paid” contemplate the delivery of money, specific property, services or other valuable things, the question then is whether a discount coupon is a “valuable thing.” As to this point, defendant contends that “the coupon itself has a definite, discernable value measured in dollars and cents—the difference between the cash price with the coupon and the cash price without.” Plaintiff counters that the coupon has no intrinsic value in that plaintiff is unable to spend it or be reimbursed for it, and that therefore it is not the type of “valuable thing” which may be “paid.”
Plaintiff’s argument is persuasive. The above definition groups money, specific property and services with other valuable things. The former all constitute value to the entity receiving it. The same should likewise hold true for “other valuable things.”
Defendant argues that the coupons are valuable from an advertising and marketing perspective. Plaintiff obviously distributes these coupons to increase its admissions. Since the physical appearance of the coupons distributed through different sources is distinguishable, plaintiff is able to analyze the coupons it honors to gather demographic information concerning its patrons. Defendant concedes, however, that the value attributable to such coupons would probably not be equal to their face value and that to measure whatever value there is would be time-consuming and difficult. It is for precisely these *64 reasons that defendant’s argument must be rejected. A prominent feature of the tax is its administrative convenience. Furthermore, under this concept of value, a valuable thing is not being paid. The value is derived later, based, for the most part, on plaintiff’s efforts. Hence, the coupons do not constitute “valuable things” which, in turn, may be paid. Accordingly, as I construe the statute, the amount attributable to the face value of plaintiff’s coupons is not taxable.
Defendant argues that the court should give weight to his long-standing interpretation of the provision. He argues that at least since late 1973 his position has been that the sales price, charge or receipt upon which the sales tax is calculated is the “amount paid in cash plus any coupon.” See State Tax News, Yol. II, No. 5, October/November 1973 at 88; State Tax News, Vol. V, No. 3, May/June 1976 at 57.
Typically, a long-standing administrative practice, without change by the Legislature, is entitled to great weight in construing taxing statutes. Tewksbury Tp. v. Jersey Central Power & Light Co., 159 N.J.Super. 44, 386 A.2d 1348 (App.Div.1978), aff’d 79 N.J. 398, 400 A.2d 60 (1979); See also Atlantic City Elec. Co. v. Taxation Div. Director, 5 N.J.Tax 15 (Tax Ct.1982); American Tel. & Tel. Co. v. Taxation Div. Director, 4 N.J.Tax 638 (Tax Ct.1982). Here, however, defendant’s interpretation has been based on subsections (a) and (b) which impose a 6% sales tax with certain exception on
(a) [t]he receipts from every retail sale of tangible personal property ... [and]
(b) [t]he receipts from every sale, except for resale, of [certain enumerated services], [N.J.S.A. 54:32B-3]
The act defines a “receipt” as:
[t]he amount of the sales price of any property and the charge for any service taxable under this act, valued in money, whether received in money or otherwise, including any amount for which credit is allowed by the vendor to the purchaser, without any deduction for expenses or early payment discounts, but excluding any credit for property of the same kind accepted in part payment and intended for resale and excluding the cost of transportation where such cost is separately stated in the written contract, if any, and on the bill rendered to the purchaser. [N.J.S.A. 54:32B-2(d) ]
*65 Defendant has relied on the above definition to justify his position published in the State Tax News releases. Defendant now argues that 3(a) and 3(b) are consistent with 3(e), and that they should be treated alike. I do not agree. The taxing provisions are related but not necessarily consistent. The Legislature chose to define 3(e) in terms of an admission charge (which in turn was defined as the amount paid), not receipts. The use of contrasting language applicable to similar subject matter is indicative of the Legislature’s intent to provide different treatment, Malone v. Fender, 80 N.J. 129,136, 402 A.2d 240 (1979), or, at least, to make a purposeful distinction. Smith v. Hazlet Tp., 63 N.J. 523, 527, 309 A.2d 210 (1973). Therefore, without addressing the merits of defendant’s interpretation of 3(a) and 3(b), I find that its interpretation has no bearing on 3(e). Furthermore, even defendant’s letters to plaintiff regarding the present controversy reflect an analysis improperly based upon “receipts.” I will therefore not attribute any weight to any prior interpretation by defendant.
This leaves me with my original conclusion, i.e., that plaintiff’s coupons are not “valuable things” which, in turn, may be paid. The Legislature has failed to clearly express its intention to tax discount coupons or anything other than the economic value actually paid. Thus, I hold that the amount attributable to the face value of plaintiff’s coupons over and above actual payments is not taxable.
Defendant has argued that summary judgment is inappropriate due to the existence of substantial questions of fact. He contends that additional discovery is needed with regard to the function of plaintiff’s coupons as a marketing technique or tool. However, plaintiff concedes for purposes of its summary judgment motion that the coupons it collects may be used to determine the effectiveness of its advertising and that it may therefore receive some incidental benefit. As a result of this concession, this fact is not in dispute.
Defendant also believes that he should be afforded an opportunity to retain an expert in economics or merchandising. He *66 contends that such an expert would confront plaintiffs contentions that the use of coupons constitutes a reduction in the admission charge, not a credit or cost of doing business, and that the value of the coupons is not part of the admission charge and not part of the amount paid. However, I believe that the underlying issues are ones of law rather than fact and I have treated them accordingly.
There being no genuine issue of material fact, the case is ripe for summary judgment. Judson v. Peoples Bank & Trust Co., 17 N.J. 67, 110 A.2d 24 (1954).
Plaintiffs motion for summary judgment is granted. Defendant’s cross motion for summary judgment is denied. The Clerk of the Tax Court shall enter judgment in favor of plaintiff.